## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:16-CV-14461-MIDDLEBROOKS

CRAIG BELL and DENNIS STANTON,

        Plaintiffs,

v.

BEYEL BROTHERS, INC., MICHAEL
WAYNE EVERETT KUCHLER, and
BERT AMMONS,

        Defendants.

_____/

BEYEL BROTHERS, INC., MICHAEL
WAYNE EVERETT KUCHLER, and
BERT AMMONS,

        Plaintiffs,

v.

CRAIG BELL,

        Defendant.

_____/

## ORDER AND OPINION DENYING COUNTER-DEFENDANT CRAIG BELL'S MOTION TO DISMISS AMENDED COUNTERCLAIM

THIS CAUSE comes before the Court on Plaintiff/Counter-Defendant Craig Bell's ("Bell") Motion to Dismiss Amended Counterclaim ("Motion"), filed on February 3, 2017. (DE 32). Defendants/Counter-Plaintiffs Beyel Brothers, Inc. ("Beyel Bros."), Michael Wayne Everett Kuchler ("Kuchler"), and Bert Ammons ("Ammons") (collectively, the "Defendants" or "Counter-Plaintiffs") filed a Response in opposition on February 17, 2017 (DE 33), to which Bell replied on February 24, 2017 (DE 34). For the reasons stated below, the Motion is denied.

## BACKGROUND

The instant admiralty action concerns the allocation of liability for personal injuries and property damage arising out of a boat capsizing. (Amended Complaint (DE 6), hereinafter "Complaint" or Compl.," at ¶ 1). Bell is the owner of the boat in question, a 16' Twin Vee vessel (the "vessel"). (*Id* at ¶ 2). Plaintiff Dennis Stanton ("Stanton," with Bell, the "Plaintiffs" or "Counter-Defendants") is Bell's friend and was a passenger onboard the vessel. (*Id*. at ¶ 3). Beyel Bros. is a Florida corporation that, among other services, provides inland and ocean towing. (*Id*. at ¶ 4). On March 9, 2016, Bell and Stanton were fishing from the vessel in the Indian River. (*Id*. at ¶ 7). At some point, "the vessel's outboard gas engine failed." (*Id*.). Although Plaintiffs tried to navigate the vessel to a nearby boat ramp, the wind and tide caused it instead to drift towards a "rocky area off Fisherman's Warf Marina." (*Id*.).

Thereafter, Kuchler, a Beyel Bros. employee, maneuvered one the company's "Jon Boats" to Bell's vessel. (*Id*. at ¶ 8). Kuchler reached the vessel, tied it to the Jon Boat, and began towing it toward a boat ramp. (*Id*.). During this process, another Beyel Bros. employee, Ammons, was operating the tugboat *Brittany Beyel*. (*Id*. at ¶ 9). According to the Complaint, the tugboat either collided with the vessel or produced a "wash," the result in either case being that Bell and Stanton were thrown from the vessel into the water. (*Id*.). Bell and Stanton both allegedly sustained injuries from the ejection and Bell's vessel was damaged. (*Id*. at ¶ 10).

Plaintiffs filed a Complaint against Defendants on October 25, 2016 (DE 1), and amended it once, on November 16, 2016 (DE 6). The Amended Complaint contains twelve counts, asserting negligence and negligence *per se* by each Plaintiff against each Defendant. (*Id*. at ¶¶ 14-85). Defendants filed an Answer on December 2, 2016 (DE 13), which included one counterclaim against Bell for contributory negligence (*id*. at 12-13). On January 24, 2017, the

Court issued an order dismissing the counterclaim for failure to state a claim upon which relief could be granted. (DE 28). The dismissal was based on the absence of a theory of causation connecting Bell's alleged breaches of duty to Stanton's injuries. (*Id.* at 5-6).

On January 27, 2017, three days after the dismissal order, Defendants filed an Amended Counterclaim for contribution, which sought to cure the deficiencies that the Court had identified. (DE 29). The Amended Counterclaim is different from its predecessor in the following respects: (1) rather than alluding to "negligence" generally (DE 13 at 12-13), the new version refers specifically to the negligence elements of duty, breach, causation, and damages (DE 29 at 2-3); (2) the catalogue of Bell's "breache[s]" in the Amended Counterclaim (*id.*) is longer than, and for the most part, distinct from, the violations and failures labeled as "negligence" in the original counterclaim (DE 13 at 12-13); and (3) the vessel's capsizing is now described as the "direct and proximate result of Bell's actions" (DE 29 at 3), where the prior version had been silent on any such connection. In the instant Motion, Bell again seeks to dismiss the Amended Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). (DE 32 at 1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover*

*v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## DISCUSSION

Bell's sole argument in favor of dismissal is that Defendants have yet again failed to set forth allegations that establish the causality prong of a negligence claim. In particular, he

contends that the counterclaim does not allege *how* his alleged breaches caused the wash or collision between the tugboat and vessel as the latter was being towed.  Instead, Bell maintains, the Amended Counterclaim merely lists more types of breaches that led the vessel to drift, and then assumes that these breaches "somehow" caused Stanton's injuries.  (DE 32 at 4). Defendants respond that the issue is not whether the Amended Counterclaim adequately alleges facts that could support the theory that Bell caused the wash or the collision, but whether it adequately alleges that "Stanton's *injuries* were proximately caused or contributed to by Bell's breaches."  (DE 33 at 6) (emphasis in original).[1]  Alternatively, Defendants argue that, even if the relevant inquiry centers on the cause of the vessel's capsizing, "any one of or all of the allegations, taken as true, could have" produced that result.  (*Id.* at 7).

Since the federal rules "do not prescribe a heightened pleading standard for maritime negligence claims", *Everhart v. Royal Caribbean Cruises Ltd.*, Civ. No. 07-23098, 2008 WL 717795, at *3 (S.D. Fla. 2008) (Martinez, J.), the sufficiency of Defendants' Amended Counterclaim is governed by Fed. R. Civ. P. 8(a)(2).  In order to make out a claim under that rule, it is not necessary for the plaintiff to "specifically plead every element of a cause of action." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Allegations are assessed cumulatively such that "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." *Rodriguez-Reyes v. Molina Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013).  At the same time, "it is still necessary that a

---

[1] I do not endorse Defendants' attempt to distinguish the cause of Stanton's injuries from that of the vessel's capsizing.  The Amended Counterclaim itself incorporates by reference Stanton's allegation that his injuries were "a result of the capsize." (DE 29 at 3).  Thus, there is no dispute that the one proceeded directly from the other, and that whatever caused the vessel's capsizing proximately caused Stanton's injuries.  Further, the Amended Counterclaim's breach allegations are oriented towards the capsizing, not the injuries, stating that "[a]s a direct and proximate result of Bell's actions, the subject vessel capsized." (*Id.*).  For these reasons, I consider only whether the Amended Counterclaim adequately pled that Bell's actions caused the vessel to capsize.

[pleading] contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe*, 253 F.3d at 683 (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)); *see also Iqbal*, 556 U.S. at 678 (courts will draw "reasonable inference[s]" flowing from the "factual content" pled).

Both Parties acknowledge that, under admiralty law, causation is a material element of a negligence – and thus also a contribution – theory. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).   To prove causation, a plaintiff must establish "a cause and effect relationship . . . between the alleged tortious conduct and the injury" – that is, "cause in fact" (or "actual" or "but-for causation") – as well as the "foreseeab[ility]" of the "conduct in question" producing the alleged harm – i.e., "proximate causation." *Smith v. United States*, 497 F.3d 500, 506 (5th Cir. 1974); *see also Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 108 Ohio St. 3d 494, 502-03 (Oh. 2006) (Moyer, C.J., concurring) (defining causation as "a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justified imposing liability (i.e., proximate cause)"); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 645 (7th Cir. 2008) (causation requires "a nexus between breach of duty and harm") (citation omitted).[2]   Thus, at the motion to dismiss stage, it is enough if one can reasonably infer actual and proximate causation for the vessel's capsizing from the counterclaim's allegations.

---

[2] The Supreme Court advises that, when considering the question of proximate causality, "courts sitting in admiralty may draw guidance from, *inter alia*, the extensive body of state law applying [its] requirements and from treatises and other scholarly sources." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996). Accordingly, I rely on state law formulations of causation, where appropriate.

I find that the Amended Counterclaim satisfies this test.   Defendants propose the following breaches by Bell:

> (a) [i]mproperly anchoring the subject vessel from the stern; (b) [a]nchoring the vessel in a restricted area including but not limited to directly behind the tug boat *Brittany*; (c) [s]tanding in the vessel; (d) [f]ailing to instruct Dennis Stanton to not stand in the vessel; (e) [f]ailing to navigate the vessel to avoid the strong current; (f) [f]ailing to navigate the vessel to avoid the propeller wash from the tug boat *Brittany*; (g) [f]ailing to navigate the vessel to avoid the restricted area behind the tug boat *Brittany*; (h) [v]iolation of Inland Navigation Rules 5, 7, 8, 9, 18, 34, and 37.

(DE 29 at 2-3).  Of course, any or all of these alleged breaches could in theory be but-for causes of the vessel's fate.  A boat can capsize only once it is in the water, and even then, only under certain conditions.  At the very least, these allegations support the propositions that the vessel was in the water, that it was navigated and/or compelled to a certain spot, and that this spot was inhospitable to recreational boats.[3]  Taken as true, but for Bell's failures to properly anchor or navigate it, the vessel would not have wound up in the vicinity of Beyel's boats, and the accident would not have occurred.

But that does not mean that any or all of Bell's purported breaches which led to the vessel's imperilment are legally sufficient to state the causation element of Defendants' claim.  Beyond cause in fact, Defendants must allege facts that support proximate causation.  On that score, the question is whether "it was foreseeable that" at least one of Bell's alleged actions or

---

[3] The purported breaches must also be read in light of Defendants' Answer to the underlying Complaint because the admissions therein are binding.  *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (it is a "general rule that a party is bound by the admission in his pleadings").  Defendants' Answer admits that "at the time of the incident[,] Bell's vessel's engine was inoperable while in the Indian River . . . and that the vessel was being overpowered by tide and wind and was being pushed toward a rocky shore." (DE 6 at ¶ 7).  The Answer further admits that Kuchler attempted to rescue Plaintiffs, "who were in peril of crashing into the rocky shore." (*Id.*).  Thus, to establish the factual context of the counterclaim's allegations, the Court relies on the mutually acknowledged facts of Plaintiffs' precarious situation.

omissions "would cause the specific injury that actually occurred." *Porter v. Fla. Dep't of Agriculture & Consumer Serv.*, 689 So. 2d 1152, 1155 (Fla. 1st DCA 1997). The issue here is not whether Bell's actions *happened to be* links in the chain of facts leading to the vessel's capsizing. It is rather whether "prudent human foresight would lead one to *expect*" the type of injury that occurred to follow from one such link, or if instead "the individual's conduct is so unusual, extraordinary or bizarre" as to make the injury "utterly unpredictable in light of common human experience." *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005) (citations omitted) (emphasis added). Ordinarily, foreseeability is "a question of fact for a jury to resolve." *Palma v. BP Prods. N.A., Inc.*, 347 F. App'x 526, 528 (11th Cir. 2009). However, the issue "may be decided [as a matter of law] by a court when facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.'" *Id.* (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992); *Roberts v. Shop & Go, Inc.*, 502 So. 2d 915, 917 (Fla. 2nd DCA 1986)).

In this case, Defendants plead enough of Bell's actions and omissions from which the Court may reasonably infer that the vessel's capsizing could be expected to follow. In particular, the Counterclaim places the vessel, as a result of Bell's navigation, "directly behind [a] tug boat" (DE 29 at 2) that was producing a "propeller wash" (*id.* at 3) in a "strong current" (*id.*). It is possible that a factfinder, relying on his or her experience, would find these conditions sufficiently destabilizing, in and of themselves, to tip the vessel over. *Goldberg*, 899 So. 2d at 1116. Or, stating it in the converse, the allegations are not so "unequivocal" such that the *only* reasonable inference is that some other, unpredictable, and intervening cause substantially led the vessel to capsize. *Palma*, F. App'x at 528. Therefore, I do not accept Bell's argument that the

Counterclaim's allegations explain, at most, how the vessel drifted and where it came to rest prior to it capsizing, but not how the capsizing actually occurred.[4]

Invoking language from the Court's order (DE 28 at 6) dismissing the original counterclaim, Bell protests that the instant Counterclaim still does not properly distinguish between the breach and causation elements of a negligence claim. He asserts that the second version could not have cured the deficiencies in the original because it only adds new allegations as to breach, without addressing causation in any detail. Bell's reliance on my discussion of the difference between breach and causation is misplaced. It is true that the two elements are conceptually distinct. *See Ciomber*, 527 F.3d at 645 ("an admission to a breach of duty has no bearing on whether that breach actually caused the harm asserted"). But so long as a pleading contains allegations – however organized – from which each material element can be inferred, it is not necessary for the pleading party to segregate each element into a discrete allegation or to name the element explicitly. *Roe*, 253 F.3d at 683; *Rodriguez-Reyes*, 711 F.3d at 55. The first counterclaim was deficient not because it failed to recite the words "cause" or "causation,"[5] but rather because it contained no allegations from which actual and proximate causation could reasonably be inferred. Defendants have cured that deficiency by proposing a scenario which does precisely that. It is not relevant that, in constructing this scenario, they used the term

---

[4] Bell implies that Defendants' causation theory does not make sense without discussing what happened after the Jon boat began towing the vessel. But this presumes, without inquiry, that Defendants admit the intervention of the Jon boat was a but-for cause of the vessel capsizing. Defendants do not appear to admit this. Even if Defendants agreed that the towing process was a cause in fact of the accident, they were not required to affirmatively plead that it *did not* constitute a superseding proximate cause. *Cf. In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 815 (9th Cir. 1992) (explaining that a plaintiff has the burden to rebut a superseding cause theory only once a defendant "produces sufficient evidence to raise the issue," thereby implying that it can be addressed only after the discovery stage is complete).

[5] Indeed, I expressly declined to rule on whether "Defendants were obliged to recite" the elements' titles "in addition to providing the facts from which those elements can be inferred." (DE 28 at 5, n.2).

"breach" as an umbrella denomination to introduce the critical allegations but then referred to causation only in passing.

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff/Counter-Defendant Craig Bell's Motion to Dismiss Amended Counterclaim (DE 32) is **DENIED**.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida, this 7 day of April, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record